PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TYLER BURKEY, *etc.*, | ) | CASE NO. 4:17CV338 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| HEATHER HUNTER, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 92 and 98] |

Pending before the Court is Defendants Mahoning County, Ohio, Deputy Sheriff Heather Hunter, Corrections Officer Carl Vath, and Deputy Sheriff Tyler Peters' Motion for Summary Judgment. ECF No. 92. Plaintiff Tyler Burkey responded (ECF No. 96) and Defendants filed a reply in support (ECF No. 97). Additionally, Defendants filed an Objection and Motion to Strike Affidavit of David Engler. ECF No. 98. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment and denies Defendants' Motion to Strike Affidavit of David Engler as moot.

## I. Background

### A. Decedent Is Found and Triaged At St. Elizabeth Hospital

On August 23, 2015, St. Elizabeth Hospital Police Officer Xavier Young was dispatched to the top floor of the St. Elizabeth Hospital parking garage. ECF No. 91 at PageID #: 1162. Officer Young observed Kevin Burkey ("Decedent"), with one foot on the ledge, drink a vial of an unknown liquid. *Id.* Officer Young also observed that Decedent had a large, stitched

(4:17CV338)

laceration on his forehead. *Id.* It was later determined that Decedent had been seen in the St. Elizabeth Hospital Emergency Room following a motor vehicle accident at some time prior to being discovered on the top floor of the parking garage. *Id.* Officer Young ordered Decedent to walk over to where he was standing, and Decedent complied. ECF No. 82 at PageID #: 368.

Decedent was transported to the St. Elizabeth Hospital Emergency Room, where he was triaged by Nurse Michelle George. ECF No. 91 at PageID #: 1162. As part of her triage responsibilities, Nurse George completed a six-question suicide screening template when Decedent was brought into the emergency room. ECF No. 83 at PageID #: 432-33. Because Decedent responded "yes" to some of the questions, he was placed on suicide precaution in the emergency room. *Id.* at PageID #: 434-36, 445. The suicidal diagnosis rested with the attending physician, Holli Martinez. *Id.* at PageID #: 449. Dr. Martinez was present when Nurse George asked Decedent the screening questions, and Dr. Martinez entered a note indicating it was okay to transfer Decedent to Mahoning County Jail with suicide precautions. *Id.* at PageID #: 448, 479. However, no suicide precautions were ever communicated by St. Elizabeth's staff or St. Elizabeth's police officers to corrections staff at the jail. ECF No. 92 at PageID #: 1173; ECF No. 96 at PageID #: 1215-16.

**B. Decedent Is Transported to the Mahoning County Jail**

On August 23, 2015, at approximately 2:55 p.m., Decedent was transported to the Mahoning County Jail by St. Elizabeth Police Officer Nicholas Ritchie. ECF No. 91 at PageID #: 1163. At intake, they were met by Deputy Mary Jane Greene. *Id.* Jail personnel were provided with a document entitled "After Visit Summary" from St. Elizabeth Hospital stating

2

(4:17CV338)

Decedent's diagnoses were "drug overdose, accidental or unintentional, initial encounter, and polysubstance abuse." *Id.*; ECF No. 84 at PageID #: 603. Jail personnel also received a Suspect/Arrest Supplement indicating Decedent was being charged with drug theft. ECF No. 84 at PageID #: 609; ECF No. 91 at PageID #: 1163. Officer Ritchie did not orally relay any information about Decedent to anyone at the jail. ECF No. 91 at PageID #: 1163.

### C. Deputy Hunter Intakes Decedent

Deputy Heather Hunter was working as an intake officer for the Mahoning County Jail on the day of Decedent's booking into the jail. *Id.*; ECF No. 85 at PageID #: 627-28. At intake, Officer Hunter noticed Decedent had a large, stitched laceration on his forehead. ECF No. 91 at PageID #: 1163. Officer Hunter completed a Pre-Screening Report for Decedent upon his arrival at the jail. *Id.* The second question on the Pre-Screening Report asked, "Do you currently have a serious or potential serious medical or mental issue needing immediate attention or are you currently on any medication?" ECF No. 85 at PageID #: 636. Upon receiving Decedent's response, Officer Hunter wrote or circled "mental." *Id.* Officer Hunter does not recall taking further action with the information provided in the Pre-Screening Report. *Id.*

### D. Nurse Martha Livingston Assesses Decedent

Following Officer Hunter's Pre-Screening Report, Nurse Martha Livingston conducted a medical assessment of Decedent. ECF No. 91 at PageID #: 1163. Nurse Livingston also noticed the large, stitched laceration on Decedent's head. ECF No. 86 at PageID #: 668. Due to the laceration, Decedent was placed on the medical floor of the jail. ECF No. 91 at PageID #: 1163.

3

(4:17CV338)

Nurse Livingston did not receive the Pre-Screening Report completed by Deputy Hunter. ECF No. 86 at PageID #: 677.

On August 24, 2016, at approximately 11:12 a.m., Decedent was moved from the medical floor to L-Pod, Cell L-2. ECF No. 91 at PageID #: 1163.

**E. The Morning of Decedent's Suicide**

On August 25, 2015, at approximately 7:00 a.m., Deputy Tyler Peters arrived at L-Pod as the officer responsible for L-Pod and conducted a headcount. *Id.* Officer Peters was not notified of any information from the Pre-Screening Report. ECF No. 88 at PageID #: 786-87. He was aware Decedent had been transferred from the medical floor of the jail to L-Pod. *Id.* at PageID #: 781.

At approximately 8:41 a.m., Deputy Carl Vath relieved Officer Peters so that Officer Peters could report to the gun range to obtain his firearm qualification. ECF No. 91 at PageID #: 1163. Officer Vath was assigned as a float deputy that day, requiring him to provide assistance to other deputies as needed. ECF No. 87 at PageID #: 720-21. Officer Vath was given approximately five minutes of notice before relieving Officer Peters. *Id.* at PageID #: 725.

In Officer Peters' absence, Decedent approached Officer Vath and asked him to contact medical staff because he felt like his blood pressure was high. ECF No. 91 at PageID #: 1164. The Mahoning County Jail has a standing order for officers to contact medical staff if an inmate or detainee asks for medical help. ECF No. 85 at PageID #: 649. Officer Vath duly contacted medical staff, and a nurse evaluated Decedent within the hour. ECF No. 91 at PageID #: 1164.

4

(4:17CV338)

Shortly afterwards, Decedent returned to the deputy's podium to inform Officer Vath that Decedent needed to speak with a psychiatrist because "no one knows what he is going through." *Id.* Officer Vath explained the procedure for requesting a medical visit, including how to complete the medical request form and where to put the form upon completion. *Id.*

Officer Peters returned from the gun range at approximately 10:00 a.m. to resume his duties at L-Pod. *Id.* Officer Vath did not inform Officer Peters of Decedent's request to speak with a psychiatrist. *Id.* Nor did he note Decedent's request in the jail log. *Id.* At approximately 10:40 a.m., Nurse Amy Yakopec took Decedent's blood pressure. *Id.*

### F. Decedent's Suicide

At approximately 11:45 a.m., Officer Peters ordered L-Pod to lock down. *Id.* All inmates were secured in their cells except for those cleaning L-Pod. *Id.* At around 12:00 p.m., Officer Peters secured the inmates in charge of cleaning L-Pod. *Id.* He then advised Central Control to take over L-Pod's screen and left for his lunch break. *Id.* Officer Peters did not perform a headcount or personal observation of the inmates prior to taking his lunch break. ECF No. 88 at PageID #: 798. He returned from his lunch break at approximately 12:30 p.m. ECF No. 91 at PageID #: 1164. Officer Peters did not eat his lunch during his lunch break. ECF No. 88 at PageID #: 804. Upon returning from his lunch break, he left to microwave his lunch before resuming his responsibilities. *Id.* Officer Peters did not conduct a headcount or personal observation of the inmates upon returning from his lunch break. *Id.* at PageID #: 858-59.

Mahoning County requires its officers to conduct personal observations of inmates twice an hour during lockdown. *Id.* at PageID #: 827. The purpose of the observation checks of the

5

(4:17CV338)

inmates was to "ensure their state of well-being; i.e. they are alive, free from injury or assault . . . ." ECF No. 96 at PageID #: 1221. Because Officer Peters failed to conduct a personal observation or headcount as required by Mahoning County Jail policy, he was subsequently disciplined. ECF No. 88 at PageID #: 798-99.

At approximately 1:00 p.m., Central Control advised that the headcount in L-Pod was clear. ECF No. 91 at PageID #: 1164. Accordingly, Officer Peters deactivated lockdown in L-Pod, permitting the L-Pod inmates to leave their cells. *Id.* at PageID #: 1164-65. At approximately 1:02 p.m., an inmate approached Officer Peters and informed him that there was a "guy laying down over here." *Id.* at PageID #: 1165. Officer Peters immediately went to Cell L-2 and discovered Decedent lying on the floor face-up with a white sheet tied around his neck. *Id.* The other end of the sheet was tied to the stool of his cell desk. *Id.* Officer Peters checked Decedent's right wrist for a pulse and radioed medical staff and float deputies for assistance. *Id.* Officer Peters ordered the lockdown of all L-Pod inmates, securing all cell doors save for Cell L-2. *Id.* Paramedics and deputies continued life support techniques until they were advised to discontinue resuscitation efforts at approximately 1:41 p.m. *Id.*

### G. Review of Decedent's Suicide

Officer Peters reviewed the surveillance video of Decedent's cell after Decedent's suicide. ECF No. 820 at PageID #: 820. He observed video of Decedent manipulating bed linens, then rolling on the floor. *Id.* at PageID #: 821. The footage from the video indicates Decedent's actions taking place prior to Officer Peters' return from his lunch break. *Id.* at PageID # 820.

6

(4:17CV338)

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." Guarino v. Brookfield Twp. Trustees., 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox v. Ky. Dep't. of Transp., 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

(4:17CV338)

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Discussion

Defendants contend summary judgment is proper for two reasons. First, Defendants argue Defendants Hunter, Vath, and Peters enjoy qualified immunity from Plaintiff's claims. Second, Defendants allege Plaintiff's *Monell* claim against Defendant Mahoning County must fail. Defendants maintain Plaintiff cannot show Mahoning County had a policy or custom of inaction depriving Decedent of his constitutional rights or failed to provide adequate training for its employees. The Court takes each of Defendants' arguments in order.

(4:17CV338)

### A. Qualified Immunity

Government officials acting in their official capacity are entitled to qualified immunity from civil suits for monetary damages for discretionary acts which do not violate clearly established law of which a reasonable person would have known. *Comstock v. McCrary*, 273 F.3d 693, 701 (6th Cir. 2001). Determining whether the defendant official should be cloaked with immunity generally requires two inquiries. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?" *Id.* "Second, was the right clearly established at the time of the violation?" *Id.* If the answer to either question is no, then qualified immunity applies. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010).

### 1. Occurrence of Constitutional Violation

Pretrial detainees have a right to adequate medical treatment under the Due Process Clause of the Fourteenth Amendment. *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). This right is analogous to the right of prisoners under the Eighth Amendment. *Id.* This right also extends to cases in which the detainee committed suicide. *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992). A violation of this right may be redressed through an action under 42 U.S.C. § 1983. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).

The Sixth Circuit held that the proper inquiry concerning a municipal employee's liability in a Section 1983 action for a jail suicide is "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs."

9

(4:17CV338)

*Barber*, 953 F.2d at 239-40.  A plaintiff must therefore prove (1) that the deceased demonstrated a strong likelihood of taking his own life and (2) that the defendants, individually, acted with deliberate indifference, not mere, negligence, to that threat.  *Davis v. Fentress Cty.*, 6 F. App'x 243, 249 (6th Cir. 2001).

### a. Likelihood of Suicide

A right to screening for suicidal tendencies arises when it is obvious the inmate has such a tendency.  *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).  In other words, the deceased demonstrates a strong likelihood of suicide if the suicide is clearly foreseeable.  *Id.*  Normal unhappiness does not establish a strong likelihood to commit suicide.  *See Barber*, 953 F.2d at 240 (decedent's concerns over his job, his engagement, and his ability to obtain custody of his young son due to his DUI arrest is insufficient to alert the jail authorities to a strong likelihood that decedent would commit suicide).  Conversely, a defendant's remarks about committing suicide, even in jest, may be enough to create a triable issue of whether there was a strong likelihood of suicide.  *Bradley v. City of Ferndale*, 148 F. App'x 499, 506 (6th Cir. 2005).

The record does not support Defendants' claim that there was no basis for assessing Decedent as suicidal.  Just two days prior to Decedent's suicide, an officer found Decedent on the top floor of a parking garage with one foot on the ledge.  ECF No. 91 at PageID #: 1162.  Decedent was transported to the St. Elizabeth Hospital, where Nurse George conducted a six-question suicide screening template upon Decedent's admission into the emergency room.  ECF No. 83 at PageID #: 432-33.  Decedent responded "yes" to some of the questions, including whether he ever "wished [he] were dead," "actually had any thoughts of killing [himself]," and

10

(4:17CV338)

"had some intention of acting on [his thoughts of killing himself]." ECF No. 83 at PageID #: 560-61. As a result, he was placed on suicide precaution in the emergency room. *Id.* at PageID #: 434-36, 445. A jury could reasonably infer from these facts that Decedent's behavior demonstrated a strong likelihood of suicide.

### b. Deliberate Indifference

A constitutional claim against a prison official for deliberate indifference to serious medical needs has both an objective and subjective component. *Border v. Trumbull Cty. Bd. Of Com'rs*, 414 F. App'x 831, 835 (6th Cir. 2011). The objective component requires a plaintiff to show a sufficiently serious medical need. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). The subjective component requires the plaintiff to allege facts which, if true, would show (1) that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, (2) that he did, in fact, draw the inference, and (3) that he then disregarded that risk. *Id.* at 540. A plaintiff need not show that the official acted with the specific intent to cause harm, but must show evidence permitting an inference that the official had the requisite knowledge. *Id.* Each defendant's liability must be assessed individually based on the defendant's own actions. *Nallani v. Wayne Cty.*, 665 F. App'x 498, 506 (6th Cir. 2016).

Defendants do not challenge that Decedent had a sufficiently serious medical need. "[P]sychological needs manifesting themselves in suicidal tendencies are serious medical needs." *Davis*, 6 F. App'x at 249. Rather, Defendants contend Hunter, Vath, and Peters neither perceived facts from which to infer that Decedent was a substantial suicide risk, nor actually drew that inference. ECF No. 92 at PageID #: 1179. In support, Defendants claim corrections staff,

11

(4:17CV338)

including Hunter, Vath, and Peters, were never informed of either the incident at the St. Elizabeth's Hospital parking garage or Decedent's placement on suicide precaution at the emergency room. *Id.* at PageID #: 1180. Defendants conclude Plaintiff cannot show a genuine issue of material fact as to whether Hunter, Vath, or Peters were deliberately indifferent to Decedent's psychological needs.

### i. Expert Witness Evidence

Plaintiff offers the expert witness report and deposition testimony of Timothy J. Murray as evidence of Mahoning County and its employees' deliberate indifference to Decedent's medical needs. Murray "states the expectations for a viable jail suicide prevention program" and "details the many ways by which the actions of Jail personnel failed to meet those basic expectations." ECF No. 96 at PageID #: 1225. From this, he concludes "the staff failures coupled with the noted systemic problem indicators takes this situation beyond negligence to a level of deliberate indifference." ECF No. 89 at PageID #: 1030.

The principles governing admissibility of evidence do not change on a motion for summary judgment. Fed. R. Civ. P. 56(c)(2); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). The trial court acts as a gatekeeper to ensure speculative and unreliable opinions do not reach the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 599 (1993). To properly serve this function, the trial court must assess whether the evidence is both relevant and reliable. *Id.* at 589. Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a). However, expert testimony "which attempts to tell the jury what result to reach and

(4:17CV338)

which runs the risk of interfering with a district court's jury instructions" and "offering nothing more than a legal conclusion" is unhelpful to a jury and may be excluded. *Woods v. Lecureux, 110 F.3d 1215, 1220-21 (6th Cir. 1997)*.

Because Murray's expert report and deposition testimony are unreliable and unhelpful to a jury, they cannot be used to show Mahoning County staff acted with deliberate indifference. Whether a prison official acted with deliberate indifference depends on that official's state of mind. *Woods*, 110 F.3d at 1221. Murray opines that "[a]dministrators and staff at Mahoning County Jail were aware of the risk of suicide" (ECF No. 89 at PageID #: 1030) but provides facts, which at best, show that prison officials *should* have known of the risk of suicide. An expert opinion inferred from speculation of an individual's mental state should not reach a jury. *See Woods*, 110 F.3d at 1221 ("[A] witness [stacking] inference upon inference and then [stating] an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact"); *see also Daubert*, 509 U.S. at 599 (tasking trial courts to keep speculative and unreliable opinions from reaching the jury). Without evidence of Defendants' subjective knowledge of Decedent as a substantial suicide risk, Murray's opinion that Mahoning County staff acted with deliberate indifference is unsupported by the record. *See Bradley*, 148 F. App'x at 509 ("[W]hen an official fails to act in the face of an obvious risk of which she should have known but did not, the official has not inflicted punishment in violation of the Eighth Amendment."). Accordingly, the Court does not consider Murray's expert witness report and deposition testimony as evidence of deliberate indifference.

(4:17CV338)

### ii. Officer Hunter

Plaintiff fails to oppose Defendants' summary judgment motion as to his claim against Hunter.[1] He has therefore failed to meet his burden on summary judgment. The Court treats Plaintiff's Section 1983 claim against Hunter as abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). Accordingly, the Court grants summary judgment on Plaintiff's claim against Hunter.

### iii. Officer Vath

Vath testified that he attended and received certification from a correctional academy. ECF No. 87 at PageID #: 718. At the academy, he learned "alert signs" for suicide, such as "if anybody is acting strangely [or if] they got bad news at home." *Id.* at PageID #: 719. If staff learns an inmate might be suicidal, staff "would contact the medical staff," who "would come down and . . . talk to them and make their recommendation." *Id.* at PageID #: 722. Plaintiff claims that, with this training, Vath "knew or should have known" that Decedent, "an inmate

---

[1] In his Statement of Facts, Plaintiff alleges "Hunter had [Decedent] complete a pre-screening report," in which Decedent noted he had a serious or potential serious mental issue needing immediate attention. ECF No. 96 at PageID #: 1216-17. Hunter placed this report in a booking file and took no further action. ECF No. 85 at PageID #: 633, 637. Plaintiff's opposition makes no reference to his claim against Hunter. Even if the Court considers Plaintiff's factual statements to be responsive to Defendants' summary judgment motion, they are insufficient to show Hunter was deliberately indifferent to Decedent's suicidal tendencies.

14

(4:17CV338)

stating that he needed to see a psychiatrist because no one knew what he was going through," was a substantial suicide risk. ECF No. 96 at PageID #: 1232.

None of this creates a genuine issue of material fact whether Vath actually perceived facts alerting Vath that Decedent was a substantial suicide risk. That Decedent approached Vath and requested a psychiatrist because "no one knows what he is going through," by itself, does not carry Plaintiff's burden in opposing summary judgment. Vath stated "[t]here was nothing alarming about Mr. Burkey . . . He didn't . . . seem like he was in any distress. He didn't seem like he was in a bad mood or anything like that." ECF No. 87 at PageID #: 734. Whether Vath *should* have known Decedent was a substantial suicide risk is immaterial. The subjective component for deliberate indifferent requires *actual* knowledge of a serious medical need. *See Bradley*, 148 F. App'x at 509. Because Plaintiff has not met his burden in showing a genuine issue of material fact as to Vath's deliberate indifference, the Court grants summary judgment on Plaintiff's claim against Vath.

### iv. Officer Peters

Plaintiff identifies several instances of Peters' misconduct at work on the day of Decedent's suicide. Peters failed to make his required rounds, then falsified records as if he had made his rounds. ECF No. 96 at PageID #: 1219. Upon returning from his lunch break, Peters failed to perform a headcount. *Id.* Finally, Peters left his post without being properly relieved. *Id.* at PageID #: 1220. Mahoning County subsequently disciplined Peters for his misconduct. ECF No. 88 at PageID #: 798-99.

15

(4:17CV338)

Plaintiff fails to show Peters was aware that Decedent was a substantial suicide risk or that Peters' actions would create a substantial risk of suicide. Peters knew Decedent had been transferred from "medical to general population." ECF No. 88 at PageID #: 781. Peters testified, however, that he had no knowledge of Decedent's incident at the St. Elizabeth's Hospital parking garage. *Id.* at PageID #: 781-82. Nor did he have knowledge of Decedent's request to see a psychiatrist (ECF No. 96 at PageID #: 1219) or Decedent's alleged request for mental health attention (ECF No. 88 at PageID #: 786-87).

Deliberate indifference entails something more than mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Without any evidence of Peters perceiving facts from which to infer a substantial risk of suicide, or evidence that he did, in fact, draw the inference that his actions would result in a substantial risk of suicide, Plaintiff cannot succeed on a deliberate indifference claim against Peters. Accordingly, the Court grants summary judgment on Plaintiff's claim against Peters.

### 2. Clearly Established Right

Because there is no genuine issue of material fact as to the deliberate indifference of Defendants Hunter, Vath, and Peters, the Court need not address whether a clearly established right exists. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

16

(4:17CV338)

## B. Municipal Liability

A municipal entity may not be sued under Section 1983 for injuries inflicted solely by its employees or agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). As a prerequisite to establishing a Section 1983 suit against a municipality, a plaintiff must therefore show the alleged federal right violation occurred because of a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). To show the existence of a municipal policy or custom leading to liability under Section 1983, a plaintiff can identify (1) the municipality's legislative enactments or official policies, (2) actions taken by officials with final decision-making authority, (3) a policy of inadequate training or supervision, or (4) a custom of tolerance or acquiescence of federal violations. *Baynes*, 799 F.3d at 621.

Plaintiff alleges in his Amended Complaint that (1) "Mahoning [County] has created an environment at the Jail that encourages personnel to disregard the terms of the policies and procedures relating to possible suicide risks, and inmates with overt mental health issues," and (2) "Hunter, Vath, and Peters have not been adequately trained in the application of those policies and procedures, and has not been adequately trained in handling suicidal and openly mentally ill prisoners at the jail." ECF No. 34 at PageID #: 183. These allegations suggest two theories of municipal liability. First, Mahoning County allegedly fostered a culture of not following its own suicide prevention policies, and this custom of tolerance or acquiescence of federal violations resulted in Decedent's suicide. Second, Mahoning County allegedly failed to train Hunter, Vath, and Peters in preventing inmate suicide, which led to Decedent's suicide.

17

### 1. Custom or Practice of Inaction

A claim that a municipality has a culture of not following its own policies can be interpreted as a claim predicated on an "inaction theory." *See, e.g.*, *Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018) (argument that the County had a custom of not following its own established policies for the provision of health care to inmates interpreted as a claim of inaction); *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (claim that the County prosecutor's office had a "general practice" of withholding exculpatory evidence construed as an assertion of a municipal custom of inactivity). To support a theory of liability flowing from a municipality's custom of inaction, a plaintiff must show (1) a clear and persistent pattern of unconstitutional conduct by municipal employees, (2) the municipality's notice or constructive notice of the unconstitutional conduct, (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction, and (4) that the policy of inaction was the "moving force" of the constitutional deprivation. *Id.* at 387-88 (6th Cir. 2014).

Plaintiff has not shown the existence of unconstitutional conduct by any Mahoning County employee. There is no evidence showing that any of the individually named Defendants, or any other Mahoning County employee, acted with deliberate indifference to Decedent's psychological distress. Even if he could make this showing, Plaintiff fails to show that Mahoning County employees engaged in a clear and persistent pattern of prior unconstitutional conduct. *See Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) ("There is an analytical distinction between being deliberately

(4:17CV338)

indifferent as to one particular incident, and having a 'policy' of always being deliberately indifferent to unconstitutional actions."). Without such a showing, Plaintiff's inaction theory fails.

### 2. Failure to Provide Adequate Training

A Section 1983 claim against a municipality for failure to provide adequate training must prove (1) the training or supervision was inadequate for the tasks performed, (2) the inadequacy was the result of the municipality's deliberate indifference, and (3) the inadequacy was closely related to, or actually caused, the injury. *Winkler*, 893 F.3d at 902. The focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). It is not enough that a particular officer was unsatisfactorily trained, or that an otherwise sound program has been occasionally negligently administered. *Id.* at 390-91. Nor is it enough to show mistakes causing injury, since "adequately trained officers occasionally make mistakes" and "the fact that they do says little about the training program or the legal basis for [liability]." *Id.* at 391.

Plaintiff does not identify with any specificity the kind of training Plaintiff claims Mahoning County failed to provide Hunter, Vath, or Peters, either in his opposition or in his Amended Complaint. As Defendants note, Mahoning County provided corrections staff with suicide prevention training in 2014. ECF No. 88 at PageID #: 764-66, 769-72. Plaintiff offers no evidence rebutting the adequacy of that training.[2]

---

[2] While the Court rejects the expert's report offered by Plaintiff, it is worth noting that Murray indicates "Deputy Hunter's name [not appearing] on the suicide prevention
(continued...)

(4:17CV338)

Accordingly, the Court grants summary judgment on Plaintiff's *Monell* claim against Mahoning County.

### C. Motion to Strike Affidavit of David Engler

Defendants filed a Motion to Strike Affidavit of David Engler. ECF No. 98. The parties fully briefed the motion (ECF Nos. 99 & 102). Plaintiff then filed a Notice of Withdrawal of Affidavit of David L. Engler, Esq. ECF No. 103. Therefore, Defendants' motion to strike is denied as moot.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. Defendants' motion to strike is denied as moot.

IT IS SO ORDERED.

 February 27, 2019             /s/ Benita Y. Pearson
Date                           Benita Y. Pearson
                               United States District Judge

---

[2](...continued)
sign in sheet" is "an indication that" she was not trained to identify inmates at risk of suicide. ECF No. 89 at PageID #: 1029. This does not evidence the alleged inadequacy of Mahoning County's training programs for suicide prevention. Moreover, Murray testified he was unaware whether Mahoning County's officers received training. *Id.* at PageID #: 1000 ("You know, I don't know what training those folks at Mahoning County Jail got . . . I'm not sure, to tell you the truth, if any officer at that facility actually received suicide prevention training or which officers received it or when they received it.").